# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JODI RUTH WILLIAMS, | Case No.: 4:17-cv-00413-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Respondent. | |

Pending before the Court is Petitioner Jodi Ruth Williams's Petition for Review/Complaint (Docket No. 1), seeking review of the Social Security Administration's decision denying her application for Social Security Disability Insurance benefits and Supplemental Security Income benefits. *See generally* Pet. for Review/Compl. (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On December 24, 2013, Petitioner Jodi Ruth Williams ("Petitioner") filed an application for Title II disability insurance benefits and Title XVI supplemental security income, alleging disability beginning March 25, 2011. Both claims were denied on March 20, 2014 and, again, on reconsideration on July 18, 2014. On August 7, 2014, Petitioner timely filed a Request for Hearing. On February 17, 2016, Administrative Law Judge ("ALJ") Christopher Inama held a

hearing in Boise, Idaho, at which time Petitioner, represented by attorney Matt Steen, appeared and testified. Impartial vocational expert, Anne T. Arrington, also appeared and testified.

On March 24, 2016, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested a review from the Appeals Council and, on August 9, 2017, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he agency committed error of law by denying Appeals Council review of the decision by the [ALJ], or otherwise to deny relief that was within the authority of the Appeals Council"; "[Petitioner] is disabled"; and "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review/Compl., p. 2 (Docket No. 1). Petitioner argues that the ALJ's residual functional capacity assessment ("RFC") is unsupported by substantial evidence because the ALJ "failed to provide manipulative limitations with the RFC that properly reflected [Petitioner's] capacity to finger, type, and use a computer mouse." Pet.'s Brief, pp. 1, 8-13 (Docket No. 17). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 13; *see also* Pet. for Review/Compl., p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the entire record to determine whether it contains evidence allowing a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since March 25, 2011, the alleged onset date." (AR 15).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of

impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that Petitioner has the following severe impairments: "osteoarthritis of the right hand and of the right knee." (AR 15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 17-18).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, the ALJ concluded:

After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), with some exceptions. Specifically, the claimant is occasionally able to climb ramps and/or stairs, is never able to climb ladders, ropes, or scaffolds, is occasionally able to balance and crouch, is never able to kneel or crawl, is never able to perform forceful gripping, grasping, or torqueing with the right dominant upper extremity, and is frequently able to handle and finger with the right dominant upper extremity. The claimant must avoid concentrated exposure to extreme heat, cold and to hazards such as unprotected heights and dangerous machinery, and must avoid even moderate exposure to vibration.

(AR 18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant can do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner can perform past relevant work as a graphic designer because such work does not require the performance of work-related activities precluded by Petitioner's RFC. *See* (AR 22-23). Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined by the Social Security Act, from March 25, 2011, through the date of this decision." (AR 23).

**B.    Analysis**

Petitioner disagrees with the ALJ's determination that she "is frequently able to handle and finger with the right dominant upper extremity" (AR 18), arguing that the "magnitude of evidence" reveals that she can only "finger and handle less than frequently." Pet.'s Brief, p. 10 (Docket No. 17); *see also id*. at p. 8 ("The record shows that [Petitioner's] ability to perform manipulative actions with her dominant hand is severely limited, and thus, she cannot frequently

use her hand as the RFC purports.").  In this respect, Petitioner argues that the ALJ erred in

improperly evaluating medical opinion evidence as well as her own symptom testimony, which

resulted in an erroneous RFC at step four of the sequential process and, in turn, a finding that

was not based on substantial evidence.  Each of these arguments is addressed below.

1.    Substantial Evidence Supports the ALJ's Assessment of the Possibly Conflicting
      Medical Opinions

The ALJ is responsible for resolving ambiguities and conflicts in the medical record.  *See*

*Magallanes*, 881 F.2d at 750.  While the medical opinion of a treating physician is entitled to

special consideration and weight, it is not necessarily conclusive.  *See Rodriguez v. Bowen*, 876

F.2d 759, 761 (9th Cir. 1989).  If the treating physician's opinions are not contradicted by another

doctor, they may be rejected only for clear and convincing reasons.  *See Bayliss v. Barnhart*, 427

F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the

treating physician's opinions are contradicted by another doctor, they can only be rejected if the

ALJ provides specific and legitimate reasons for doing so, supported by substantial evidence in

the record.  *See id.*  A lack of objective medical findings, treatment notes, and rationale to

support a treating physician's opinions is enough reason for rejecting that opinion.  *See*

*Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001).  Additionally, the ALJ may discount physicians' opinions based on internal

inconsistencies, inconsistencies between their opinions and other evidence in the record, or other

factors the ALJ deems material to resolving ambiguities.  *See Morgan v. Comm'r of Soc. Sec.*

*Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner takes issue with the ALJ's analysis of her RFC, arguing that, in accepting

the opinions of non-examining State Agency medical consultants, the ALJ ignored the opinions

of Ralph D. Heckard, M.D. and Janet King, FNP which "fully show[ ] that [she] had a

debilitating impairment in her right, dominant, hand." Pet.'s Brief, pp. 8-12 (Docket No. 17). Petitioner's arguments are misplaced for the following reasons.

First, as noted by the ALJ, Petitioner was scheduled for a medical consultative examination with Dr. Heckard on February 26, 2014 *because of the "minimal records" reflecting Petitioner's complaints*. (AR 20). And, while Dr. Heckard concluded that Petitioner "has findings at the right dominant wrist and hand of De Quervain's tenosynovitis" (AR 447), it cannot then be said – as Petitioner attempts to do here – that she "cannot logically handle and finger frequently." Pet.'s Brief, p. 9 (Docket No. 17). That is, more must be done to connect a finding of De Quervain's tenosynovitis on the one hand, and Petitioner's alleged inability to frequently handle and finger with her right upper extremity on the other hand. Without more, one does not *ipso facto* equal the other. This is especially true when considering the *balance* of Dr. Heckard's findings (at least as to Petitioner's wrist),[1] including:

- "Muscle tone is intact and there is no measured asymmetry or atrophy of musculature." (AR 445). Motor strength 5 out of 5 for right and left "wrist flexion-palmar flexion," "finger abduction," finger adduction," and "grip strength." *Id*.

- "Examination of the right wrist and hand demonstrates a positive Finkelstein test with flexion of the thumb. There is tenderness along the extensor pollicis longus but no swelling crepitus. The Tinel's as the volar aspect of the wrist is negative. Wrist brace removed for examination." *Id*.

- "The patient is able to lift and carry light objects. Digit-to-digit testing is accomplished slowly with the right but without difficulty or dyscoordination. Fine manual motor dexterity is intact, but slowed with the right." *Id*.

- "[S]he has findings at the right dominant wrist and hand of De Quervain's tenosynovitis. There is slowing of digit-to-digit and fine manual motor dexterity testing of the right had but functionality is intact." (AR 447).

---

[1] A significant portion of the medical record speaks to issues that are not relevant to the instant action, namely conditions relating to Petitioner's knee pain, reduced hearing, hypertension, and a history of an isolated seizure attributable to acute alcohol withdrawal.

- "The remainder of the musculoskeletal examination reveals intact ranges of motions and strengths. There are no deficits of motor, sensory or reflex functions of the upper of lower extremities. There is no measured muscular asymmetry or atrophy." *Id.*

- "The general medical examination reveals no evidence of acute or unstable chronic medical illness . . . ." (AR 448).

The ALJ took these components into account when comprehensively discussing Dr. Heckard's opinions and incorporating them into Petitioner's RFC, ultimately stating:

> Although Dr. Heckard did not provide a function-by-function opinion regarding the claimant's physical functioning or abilities, his right knee findings support that the claimant is reasonably precluded from kneeling or crawling, that she is limited to no more than occasional climbing or ramps and/or stairs, to no more than occasional balancing and crouching, and that she is precluded from performing forceful gripping, grasping, or torqueing with the right upper extremity. *However, the claimant's slowed manipulation but ability to do so without dyscoordination or significant difficulty, supports no greater limitation than frequently being able to handle and finger with the right upper extremity.* Lastly, while Dr. Heckard noted that the claimant is able to walk, stand, and sit unassisted, I do not take this to mean that the claimant has no limitations in terms of being on her feet, as Dr. Heckard's own findings support an assessment limiting the claimant to sedentary work activity, as right knee symptoms would reasonably be exacerbated with prolonged walking or standing. To the extent that Dr. Heckard's statement could be interpreted to mean that the claimant has no limitations in terms of walking and standing, his statement is given partial weight.

(AR 21) (emphasis added). In other words, because Dr. Heckard's opinions informed the ALJ's RFC determination, they are understood as consistent with each other – at least as to Petitioner's osteoarthritis of the right hand (the RFC is actually more restrictive than Dr. Heckard's opinions in other respects).

Second, though Nurse Practitioner King indicated via a March 6, 2014 Residual Functional Capacity Questionnaire that (1) Petitioner's bilateral carpel tunnel syndrome presented limitations in doing repetitive reaching, handling, and fingering, (2) Petitioner could only use her hands and fingers for only 1-10% of an 8-hour work-day, and (3) Petitioner would be absent from work more than four times per month as a result of her impairments, the ALJ

pointed out that the medical record (including Ms. King's own treatment notes) did not support

such restrictions. *See* (AR 22) (citing (AR 449-450). To be sure, there has never been a

diagnosis of bilateral carpal tunnel syndrome and no impairment supporting Ms. King's opinion

that the claimant is able to use her hands and fingers for only 1-10% of the workday ("a very

significant limitation"). (AR 22).[2] Moreover, Ms. King's opinion that Petitioner would miss

more than four days of work per month is entirely speculative with no narrative explanation. *See*

*id*. When evaluating medical opinions, the ALJ is not required to accept an opinion that is brief,

conclusory, or inadequately supported by objective findings. *See Bayliss*, 427 F.3d at 1216. In

short, the ALJ provided sufficient reasons for giving Ms. King's opinions only little weight. *See*

(AR 22) ("Accordingly, I give Ms. King's medical source statement little weight, as it relies on

impairments that do not exist, relies on impairments that result in no symptoms, and is

speculative without explanation).[3]

Finally, Ms. King's restricting opinions do not exist in isolation. In addition to Dr.

Heckard, state agency medical consultants opined that Petitioner retained the ability to perform a

wide variety of work, including her previous occupation as a graphics designer:

> Evidence shows you have a history most significant for advanced degenerative
> changes in your right knee and right thumb. Evidence shows you had one seizure
> from alcohol abuse, some decreased hearing in your left ear with normal on right

---

[2] Petitioner responds that Dr. Heckard's diagnosis of De Quervain's tenosynovitis proves that Petitioner "had a debilitating issue with her hand area, one that is similar to carpal tunnel syndrome." Pet.'s Brief, p. 11 (Docket No. 17). But this misses the point, as Dr. Heckard's diagnosis in this respect only goes so far in that it is untethered to any actual physical limitations that Petitioner may have. *See supra*.

[3] Additionally, as Petitioner acknowledges, Ms. King is not an "acceptable medical source." *See* Pet.'s Brief, p. 11 (Docket No. 17). ALJs are not to discount "other" medical sources without explanation, but less weight may be afforded such "other" medical sources if the ALJ provides "germane" reasons. *See Ghamin v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons include the fact that an opinion is inconsistent with objective medical evidence in the record. *See Bayliss*, 427 F.3d at 1218.

and no difficulty with hearing and understanding normal conversation. Evidence supports a deformity in your wrist without true carpal tunnel findings on exam. There is no evidence of chronic bronchitis. Evidence shows you were recently diagnosed with chronic kidney disease, with most recent lab work in the normal range. Evidence shows your hypertension is well controlled. Evidence shows you retain good strength and mobility despite your discomfort. This office appreciates that until you have your knee repaired you would have difficulty with extensive walking and standing and you would have difficulty with [consistent] movement of your right hand and thumb. However, considering your age, education, work experience and medical condition it has been determined that you retain the ability to perform a wide variety of work activities, such as you have done in the past as a graphics designer as it is normally performed in the national economy. Your claim for benefits must be denied accordingly.

(AR 108, 126); *see also* (AR 22) (ALJ assigning opinions from State Agency medical experts "significant weight" because their conclusions "are based on a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations" and are "internally consistent and well supported by a reasonable explanation and the available evidence.").[4]

To be clear, there is no dispute that Petitioner has a multitude of issues surrounding the osteoarthritis in her right hand (acknowledged as severe by the ALJ); rather, the focus is upon the lack of corroboration in the medical record (including Ms. King's own treatment notes) to the substantial physical limitations Ms. King highlights and Petitioner now correspondingly argues. The Court agrees with the ALJ that Ms. King's opinions as to the Petitioner's allegedly severe limitations are not supported by the evidence of record. The Court finds that the ALJ's decision to discount and give little weight to such opinions is supported by clear and convincing, specific, and legitimate reasons for doing so. This is not the same as a finding by this Court that Petitioner is not disabled under the applicable rules and regulations. The Court has considered

---

[4]    Though according these opinions significant weight in terms of exertional, postural, manipulative, and environmental limitations, the ALJ found that Petitioner is "additionally limited to no forceful gripping, grasping, or torqueing with her right upper extremity." (AR 22).

the conflicting evidence appropriately identified by Petitioner in support of her position on this point, but such evidence was not as favorably received as Petitioner naturally hoped. Instead, the Court is ruling here that the ALJ's decision to question Ms. King's disability opinion contains appropriate reasons for reaching and supporting that decision. As required by controlling law, the ALJ will not be second-guessed in this respect. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

      2.    <u>Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures

taken by claimant to alleviate those symptoms. *See* SSR 96-7p. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan*, 246 F.3d at 1208 (citing *Reddick*, 157 F.3d at 722).

Here, Petitioner alleges an inability to perform her past relevant work, owing to the impairments associated with her right wrist. *See, e.g.*, Pet.'s Brief, p. 12 (Docket No. 17) ("Because [Petitioner's] past relevant work requires frequent handling, the ALJ's Step 4 findings are also erroneous. Indeed, it is absurd to conclude that [Petitioner] has the capacity to perform a prior job that actually caused her current arthritic condition.") (internal citation omitted); *see also* (AR 35) (Petitioner's attorney implying during February 17, 2016 hearing that Petitioner is not capable of even sedentary work). For example, within her February 4, 2014 and April 13, 2014 "Function Report(s) – Adult," Petitioner states:

- "My carpal tunnel . . . issues are worsening as time goes on . . . . Wrist issues mainly in right hand, thumb [and] wrist. Goes numb and has pain with use. Hard to grasp small objects or to use nail clippers, tweezers; hard to open packages, simple jars/bottles at times – sometimes sudden burning sensations. My fingers/hands almost always cold/freezing. . . . . Wear wrist braces daily as needed . . . . Taking a long time even to write and fill out these forms [as] fingers go numb [and] pain off/on." (AR 300-301); *see also* (AR 402) (Petitioner describing wrist pain in 2013 as: "wrist (right mainly) carpal tunnel, thumb pain/wrist (swelling below thumb), left side starting to get numb at times. Hard to use nail clippers, scissors, tweezers (near impossible to cut nails) grasping with thumb hard, as well as opening simple jars, packages, cans, etc. (sometimes a sudden burning sensation), fingers/hands almost always cold/freezing."). (AR 300-01).

- "Some days can't hold curling iron to curl hair. Problems trying to shave legs." (AR 302).

- "I have to start [preparing for meals] early if need to cut up things for like tacos, etc. Nothing fancy. Much slower at getting things open/prepped. Husband does main cooking." (AR 304).

- "Haven't cross-stitched, too hard to hold sewing needle for long." (AR 306).

- Identifying wrist/hand condition as affecting "lifting," "reaching," and "using hands." (AR 307, 340).

- "I feel my main issues are now with my knee [and] wrist (right both). Limited to lifting light weight. . . . . I have not had any testing on the above listed recently so can't remark on extent of damages" (AR 310).

- "Still have major issues with pain etc. knee(s), wrists, feet, back, etc. Carpal tunnel/ACL/etc. Diagnosed with osteoarthritis recently in right hand/thumb. . . . . It is in my right hand, my primary used hand. My symptoms, etc. are like last Function Report, only pain is getting worse. My back, hips, wrists (mainly right), feet, knees (mainly right), sometimes neck are all showing signs of deteriorating. . . . . The osteoarthritis affects a lot of things that I do or can do, limitations with my right hand are affecting the way things can normally be done. Hard to clip nails, hold tweezers, scissors, opening things, working with small items, buttons, tying shoes, etc. . . . . Have pain in right knee and hand all the time. . . . . My circulation in hands makes them cold most of the time. I am only able to fill these papers out over a course of the weekend as either pain or numbness. I am even wearing hand brace the whole time. (AR 332-33).

- "Used to bake from scratch a lot but stirring is too much. Small needlework is too hard anymore." (AR 335).

- "Harder to button, tying shoes more difficult. Takes longer to do hair (which I keep short). Curling iron – lose grip/feeling. Hard to get legs [shaved]." *Id.*

- "Prep work/cutting etc. takes longest. Used to cook/bake all the time, especially during Harvest and Holidays. I am slower and hands get hurting too much." (AR 337).

- "Crocheting is getting too hard any more. No more cross-stitching – needles hard to hold. Hard to hold small items, can't hike/climb in woods like used to, knees/legs won't let me. Can't throw disk golf anymore." (AR 339).

She went on to confirm as much during the February 17, 2016 hearing, testifying in response to

questions from her attorney as follows:

Q:  I see. All right. So let's talk about your hand now. All right. So same question for your hand as I, as I asked you for your knee, what sort of activities or movements or what have you irritate that right hand?

A:  Twisting, opening jars, pinching, gripping like a pencil, sewing needles. I can't do any needlepoint anymore. I can hold onto crochet hooks once in a while, you know, for a time, but then I get trigger fingers, which could be from holding my cane that aggravates. I'll switch back and forth between

hands because I have, you know, pain in both hands now. My right hand mostly was probably because I used the mouse when I was going the computers for so many years."

. . . .

Q:     Okay. So again, if we, if we go back to what you used to do for the, for the newspaper or the what – whatever, what's that word, the type-setting job.

A:     Type work.

Q:     Okay. What sort of specific duties from that job would be difficult for you with your right hand?

A:     Doing long periods of typing or moving a mouse and –

. . . .

Q:     All right. Are you able to, to button buttons?

A:     I can, but it's a – it's tough sometimes. I'm, I'm tending more to pull up jeans or pants versus zippers and buttons because they're hard.

Q:     Okay. Can you hold . . . like a grip like a coffee cup for an extended period or –

A:     Some days I can grab it. I'll, I'll have my brace on, but usually they'll take both hands with – and get something hot or if it's heavy.

. . . .

Q:     How much can you lift – let's just focus on the right. How much can you lift and, and carry with the right arm and shoulder?

A:     Weight wise I'm really not sure.

Q:     All right. Well, let, let me give you some sample items, okay? Can you open the fridge and grab out a gallon of milk out of the fridge with the right hand?

A:     I could try to grab it, but it feels like I'm – can drop it or I get snapping stabbing pains. And I have dropped a couple times, made a big mess. But it just – it tries to give out.

. . . .

Q:      Do you ever – do you need to support things . . . in the, in the right hand
        with the left hand?

A:      Yes, because I tend to lose my grip.  Even like if I'm carrying a plate from
        the counter over to the dinner table I got to use both hands.  I can't just hold
        in one hand.

(AR 46-48).

The ALJ, however, concluded that, while Petitioner's medically-determinable
impairments could reasonably be expected to cause her alleged symptoms, her "statements
concerning the intensity, persistence, and limiting effects of these symptoms are not entirely
credible . . . ."  (AR 19).  The ALJ reached this conclusion because the record was inconsistent
with the limitations she described; her treatment was limited; and her alleged limitations were
contradicted by her daily activities.  *See* (AR 19-22).  As described to follow, the ALJ's
justification in this regard amounts to clear and convincing reasons for questioning Petitioner's
credibility.

First, there is no dispute that Petitioner has problems with osteoarthritis of the right hand,
and that such problems are severe.  The ALJ concluded as much when making his disability
determination.  *See supra* (citing (AR 15) (ALJ concluding that Petitioner's "osteoarthritis of the
right hand and of the right knee" represent "severe impairments").  Even so, the ALJ specifically
accounted for Petitioner's limitations during the fourth step of the sequential process (RFC
analysis).  *See* (AR 18) (Petitioner "is never able to perform forceful gripping, grasping, or
torqueing with the right dominant upper extremity . . . .")); *see also supra* (discussing Dr.
Heckard's, Ms. King's, and State Agency medical consultants' opinions as part of RFC
analysis).  Therefore, to the extent Petitioner's arguments insist on the existence of certain
limiting impairments, they miss the point because the acknowledged right-hand limitations in the

RFC accommodate her symptoms.  The question at this stage is not whether such limitations exist but, rather, whether Petitioner is able to work even with such limitations.

Second, as to the objective medical evidence, the ALJ properly noted (1) Petitioner's alleged onset date is related to a one-time seizure activity, not joint pain; (2) Petitioner did not begin using a cane for reasons related to knee symptoms; and (3) her first report of significant right knee symptoms was approximately five years after she stopped working.  *See* (AR 20).  The ALJ concluded that these factors "are indicative that the claimant did not stop working for reasons primarily related to her alleged pain symptoms, *indicative that her pain symptoms have not been as severe as alleged between 2008 and 2013, and indicative of possible over-reporting of symptoms in connection with her application for benefits*.") (emphasis added); *see also id* (ALJ noting Petitioner's inconsistent statements to medical provider that she had no history of alcohol use, despite her previous alcohol-related seizure activity) (citing (AR 394, 451)).  "Objective medical evidence [(including *the amount* of treatment)] . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms."  20 C.F.R. §§ 404.1529(c)(2-3), 416.929(c)(2-3) (emphasis added).

Third, concerning the available post-onset date medical evidence, the ALJ considered the findings from Petitioner's medical providers.  *See* (AR 20-22).  Again, each of these records unquestionably supports the existence of medical conditions impacting Petitioner's right hand.  However, from this review the ALJ identified discrepancies between Petitioner's allegations and the medical evidence.  The ALJ also triangulated a "common denominator" among the medical providers' opinions concerning Petitioner's limitations that ultimately was reflected within the ALJ's RFC assessment.  *See id*. (comparing notes from Dr. Heckard, Gilbert Crane, M.D., Ms. King, and State Agency medical consultants).  Considered together and tested against one

another for consistency and supportability, these opinions reveal a disconnect between Petitioner's claimed inability to work and the medical record.

Finally, the ALJ concluded that Petitioner's daily activities were inconsistent with her allegations of disabling symptoms and limitations, pointing out:

> The claimant's function reports reflect good activities of daily living, despite alleging an inability to be on her feet for more than about 15 minutes at a time. Specifically, she takes care of her grandkids on some mornings (ages four and seven at the time of her application), dropping them off at school or therapy (one child has autism) up to 10 times per month, takes her dog for walks, is able to prepare simple meals for herself and for her grandchildren, and remains able to drive. The claimant also stated that she performs grocery shopping 2 to 4 times per week, shopping for 30 to 60 minutes (adding that she will go to the store 4 to 5 times per week for the purpose of exercising). *She further stated that she was able to perform yard work such as mowing with a powered mower and watering the flowers/garden (taking breaks approximately every 15 to 20 minutes depending on the day), and stated that she is able to perform household chores such as making the bed, doing the dishes, vacuuming, and light housecleaning, performing these activities for a few hours. Where the claimant alleged that she needed help, it was for more difficult activities such as taking out heavy trash or moving large/heavy items requiring getting on her knees or climbing. The ability to perform such activities is not indicative of an individual who was totally disabled as of the time that she stopped working in 2009 or as of her alleged onset date related to her one-time seizure in 2011.*

(AR 20) (citing (AR 300-310, 332-42)) (emphasis added).

In other words, the ALJ appropriately did not reject Petitioner's complaints that she suffers from certain impairments; rather, considering and discussing her daily activities (including those reflected in the medical record) his focus was on Petitioner's claim that she cannot work *because* those impairments allegedly limit her ability to work. *See, e.g.*, *Madrid v. Colvin*, 2016 WL 1161978, at *10, n.8 (N.D. Cal. 2016) ("The Ninth Circuit has held that 'the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.' As discussed herein, the ALJ did not reject Plaintiff's allegations that she suffers

hand pain, but rather evaluated record evidence regarding Plaintiff's alleged diminished dexterity.") (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991)).

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. This is not to say that the Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations, or that Petitioner does not suffer from chronic pain. Here also, Petitioner identifies (or at least suggests the existence of) conflicting evidence in support of her position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, the ALJ's decision to doubt Petitioner's credibility in denying disability benefits contains clear and convincing reasons for doing so. As required by controlling law, the ALJ will not be second-guessed as to such conclusions, on the record here and the justifications provided. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different

interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  <u>ORDER</u>

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED: March 28, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge